UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN PATRICK JOHNSON,

      Petitioner,

v.                                            Case No: 2:12-cv-469-FtM-29CM

SECRETARY, DOC, ALAN
CHAPMAN, Warden of Avon
C.I., and FLORIDA ATTORNEY
GENERAL,

      Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by John Patrick Johnson ("Petitioner) who is presently confined at the Avon Park Correctional Institution in Avon Park, Florida (Doc. 1). Petitioner attacks the convictions and sentences entered by the Twentieth Judicial Circuit Court for Charlotte County, Florida in case number 06-1201CF for twenty-nine counts of possession of child

---

[1] There "is generally only one proper respondent to a given prisoner's habeas petition." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). This is "the person with the ability to produce the prisoner's body before the habeas court[.]" Id. at 435-36. When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the attorney general or some other remote supervisory official." Id. at 436 (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, Alan Chapman and the Florida Attorney General will be dismissed from this action.

pornography. Id.  Respondent filed a response to the petition, and Petitioner filed a reply (Doc. 9; Doc. 12).

Petitioner raises one claim in his petition.  He asserts that trial counsel was ineffective for providing incompetent advice about the chances of success on a motion to suppress which resulted in Petitioner rejecting a three-year plea offer from the state (Doc. 1 at 3).

Upon due consideration of the record, the Court concludes that the petition must be denied.  Because the petition can be resolved on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background[2]

On July 25, 2006, officers from the Punta Gorda Police Department were dispatched to a home in Punta Gorda, Florida in response to a 911 call from Petitioner that he (Petitioner) had discovered his father lying deceased on the floor of a bedroom. The deceased had bloodstains around his head and police officers observed blood in several areas of the home and on furniture.  The

---

[2] Unless otherwise indicated, the facts are taken from Petitioner's July 30, 2007 motion to suppress and the memorandum filed in support of the instant petition (Ex. 2; Doc 2).

officers also observed a broken candy dish and a detached table leg on the floor of the living room.  The initial findings from the medical examiner indicated blunt force trauma to the deceased's head and torso.

Police questioned Petitioner's relatives, who were on scene, and were informed that Petitioner and his father had been involved in violent physical confrontations in the past.  At police headquarters, Petitioner was questioned about his whereabouts, violence with his father, his father's alcohol use, Petitioner's personal interests, and time-lines.  Petitioner was emotionally distraught during the interview.  Petitioner was never told that he was a suspect or a person of interest in his father's death.

After interviewing Petitioner, the police asked for permission to search the residence Petitioner shared with the deceased.  Petitioner signed a permission form authorizing the police to search the residence or any other real property located at Petitioner's address.  The permission form also stated:

> I further authorize said officer(s) to remove from my residence, real estate and/or motor vehicle, whatever documents or property whatsoever which they deem pertinent to their investigation, with the understanding that said officer(s) will give me a receipt for whatever is removed, and with the further understanding that anything removed any and will be used against me if said documents and/or property are the subject matter of a crime and/or evidence to be used in the prosecution of a criminal case.

(Ex. 5).   Petitioner was not informed that the police would turn on or search the contents of his computer.

During the search of Petitioner's home, two officers searched his bedroom.   During the search, an officer wiggled the mouse of Petitioner's computer and began clicking various folders on the desktop.   The officer clicked a folder, titled "PRONO", and an image of alleged child pornography appeared on the screen.   The officer ceased his search and contacted an assistant state attorney who secured a search warrant for the computer and subsequently discovered numerous images of purported child pornography.

The medical examiner ultimately determined that Petitioner's father died from the ingestion of isopropyl alcohol, and Petitioner was not charged with anything relating to his father's death.

## II.  **Procedural History**

On October 19, 2006, Petitioner was charged with twenty-nine counts of possession of child pornography (Ex. 1).[3]  On July 30, 2007, counsel for Petitioner filed a motion to suppress the search of Petitioner's computer (Ex. 2).   In the motion, Petitioner asserted that the police had exceed the scope of the consent-to-search.  Id.   A suppression hearing was held, and the motion was denied on the ground that the search of Petitioner's computer was

---

[3] Unless otherwise indicated, citations to exhibits are to those filed by Respondent on February 5, 2013 (Doc. 11).

within the scope of the permission form signed by Petitioner (Ex. 6 at 91-93; Ex. 7).

On May 22, 2008, Petitioner pleaded no contest to all twenty-nine counts, reserving his right to appeal the trial court's denial of the motion to suppress (Ex. 8).  Petitioner was sentenced to a total of ten years in prison, followed by five years of probation (Ex. 10 at 83-84; Ex. 11).  On appeal, Petitioner raised the issue of whether the motion to suppress was properly denied (Ex. 13). Florida's Second District Court of Appeal *per curiam* affirmed without a written opinion (Ex. 15).

Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") in which he argued *inter alia* that counsel was ineffective for failing to properly advise him about the potential success of his motion to suppress and that he rejected a three-year plea offer from the state based on counsel's advice that the motion to suppress had merit (Ex. 17).  The post-conviction court struck the ineffectiveness claim as facially insufficient (Ex. 18). Specifically, the post-conviction court noted that under Florida law, claims such as Petitioner's "typically must also include a request to withdraw an involuntary plea." (Ex. 18 at 3) (citing Goins v. State, 889 So. 2d 918 (Fla. 2d DCA 2004)).  Petitioner was given thirty days in which to file a facially sufficient amended Rule 3.850 motion. Id. at 4.

Petitioner filed an amended Rule 3.850 motion in which he reasserted his claim of ineffective assistance of counsel, but again did not move to withdraw his plea (Ex. 19). The post-conviction court again dismissed the motion as facially insufficient, noting that "[a]s the Defendant has failed to cure the pleading defect identified in the Court's previous order, the Court is not inclined to afford Defendant another opportunity to amend his facially insufficient postconviction claim." (Ex. 20).

## III. Governing Legal Principles

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants

deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Bottoson, 234 F.3d at 531 (quoting

Williams, 529 U.S. at 406).  The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155.  Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-787 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (dictum).  When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see, e.g., Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013); Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that

the factual premise was incorrect by clear and convincing evidence").

### B. Standard for Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id. This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time

of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In Missouri v. Frye, 132 S. Ct. 1399 (2012) and Lafler v. Cooper, 132 S. Ct. 1376 (2012), the United States Supreme Court clarified that the Sixth Amendment right to effective assistance of counsel under Strickland extends to the negotiations and consideration of plea offers that lapse or are rejected. See Frye, 132 S. Ct at 1404-08; Lafler, 132 S. Ct. at 1384. The Supreme Court specifically held that counsel has a duty to communicate formal offers from the prosecution to accept a plea, and that, in general, where such an offer is not communicated to the defendant, counsel "[does] not render the effective assistance the

Constitution requires." <u>Frye</u>, 132 S. Ct. at 1408.  The Court also held that, in order to show prejudice under Strickland's two-part test, a defendant must demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; and (2) the plea would have resulted in a lesser charge or a lower sentence. <u>Frye</u>, 132 S. Ct. at 1409.

## IV.  <u>Analysis</u>

In his Rule 3.850 motions, Petitioner argued that counsel was ineffective for misadvising him about his chance for success on his motion to suppress, resulting in Petitioner rejecting a three-year plea offer from the state that was conditioned on him abandoning the suppression motion (Ex. 17; Ex. 19).  Both Rule 3.850 motions were dismissed as facially insufficient by the post-conviction court (Ex. 18; Ex. 20).  Petitioner now asserts that the state court erred under <u>Missouri v. Frye</u> and <u>Lafler v. Cooper</u> by dismissing the ineffective assistance claim raised in his Rule 3.850 petitions on the basis that Petitioner was requesting a remedy that the post-conviction court could not provide (Doc. 2; Doc. 12).  Petitioner argues that the Supreme Court in <u>Lafler</u> and <u>Frye</u> clarified that, if counsel's ineffectiveness resulted in the rejection of a plea offer, the defendant is entitled to have the state re-offer the favorable plea (Doc. 2).

When Petitioner raised this ineffectiveness claim in his first Rule 3.850 motion, the post-conviction court dismissed the claim as insufficiently pleaded, stating:

> Defendant next claims that, had trial counsel given him an accurate assessment of his probability of success on his motion to suppress, he would have refrained from pursuing the motion and instead accepted the State's plea offer of three years in prison followed by 7 years of probation. According to Defendant, this plea offer was contingent on Defendant not going forward with his motion to suppress.
>
> To prevail on a claim that the misadvice of counsel resulted in the rejection of a plea offer, a defendant must demonstrate that :(1) counsel failed to communicate a plea offer or misinformed defendant concerning the penalty faced, (2) defendant would have accepted the plea offer but for inadequate notice, and (3) acceptance of the State's plea offer would have resulted in a lesser sentence." Cottle v. State, 733 So. 2d 963, 967 (Fla. 1999). While such claims usually involve a defendant who has gone to trial unaware of a plea offer, appellate courts have held that a defendant may challenge the voluntariness of a plea based on a failure to properly communicate a prior plea offer. See Haynes v. State, 24 So. 3d 726 (Fla. 4th DCA 2009); Hollander v. State, 920 So. 2d 204 (Fla. 4th DCA 2006); Gallant v. State, 898 So. 2d 1156 (Fla. 2d DCA 2005); Green v. State, 898 So. 2d 215 (Fla. 1st DCA 2005).
>
> To demonstrate prejudice on a claim that ineffective assistance of counsel resulted in an involuntary plea, a defendant typically must allege and prove that, but for the instance of ineffective assistance of counsel, he would not have entered the plea and instead insisted on going to trial. Mondy v. State, 6 So. 3d 1251 (Fla. 2d DCA 2009); Deck v. State,

985 So. 2d 1234 (Fla. 2d DCA 2008). Such claims typically must also include a request to withdraw from an involuntary plea. <u>Goins v. State</u>, 889 So. 2d 918 (Fla. 2d DCA 2004).

Rather than professing a desire to withdraw from the plea entered in this case, the Defendant instead requests that the Court set aside his convictions and resentence him to three years in prison followed by 7 years of probation, as contemplated by the State's plea offer. As the Defendant's motion does not include a request to withdraw from the plea entered May 22, 2008, the Court finds Defendant's claim of ineffective assistance of counsel facially insufficient. <u>Id.</u> Accordingly the second ground of the instant motion will be stricken without prejudice to Defendant filing an amended postconviction motion. <u>Piper v. State</u>, 21 So. 3d 902 (Fla. 2d DCA 2009); <u>Lawrence v. State</u>, 987 So. 2d 157 (Fla. 2d DCA 2008) (citing <u>Spera v. State</u>, 971 So. 2d 754 (Fla. 2007)).

As noted in <u>Goins</u>, if Defendant succeeds in withdrawing his plea pursuant to Rule 3.850, neither he nor the State will be bound by the previous plea agreement. <u>Id.</u> at 919. The Court has no authority to compel the State to reinstate its original plea offer. <u>Feldpausch v. State</u>, 826 So. 2d 354 (Fla. 2d DCA 2002); <u>See als</u> <u>Williams v. State</u>, 924 So. 2d 897 (Fla. 1st DCA 2006) (Thomas, J., concurring) ("the trial court does not have the authority itself to convey the State's plea offer."); <u>Bass v. State</u>, 932 So. 2d 1170 (Fla. 2d DCA 2006) (the State has the authority to revoke a plea offer at any time under Florida Rule of Criminal Procedure 3.172(g)). If the Court permits the withdrawal of the Defendant's plea, either side may pursue new plea negotiations, or refuse them and proceed to trial. <u>Goins</u>, 889 So. 2d at 919. Furthermore, if the Defendant is convicted after trial, the new sentence(s) may exceed those previously imposed. <u>Id.</u>

(Ex. 18 at 2-3).   In response to the post-conviction court's order to amend his Rule 3.850 motion to include a request to withdraw his plea, Petitioner filed an amended Rule 3.850 motion in which he reasserted his ineffective assistance claim and once again argued his entitlement to the three-year offer from the state (Ex. 19).   Despite the clear direction from the post-conviction court to accompany his amended Rule 3.850 motion with a request to withdraw his plea, Petitioner did not do so.  Id.   His amended motion was dismissed as facially insufficient (Ex. 20).

Petitioner appears to now assert that he should not have been required to withdraw his guilty plea prior to having his ineffective assistance claim considered by the post-conviction court and that the post-conviction court erred by requiring him to do so.   However, this argument simply does not state a federal constitutional claim.  "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992). "[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (citing Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987)).

Petitioner also argues that the state court's conclusion that it lacked authority to require the state to re-offer its prior plea offer was contrary to <u>Missouri v. Frye</u> and <u>Lafler v. Cooper</u> (Doc. 2; Doc. 12).   In <u>Frye</u> and <u>Lafler</u>, the United States Supreme Court analyzed and discussed the appropriate remedy when deficient performance by counsel led to the defendant's rejection of a plea offer and further proceedings resulted in a less favorable outcome. Neither case dealt with the procedural process that a state prisoner must follow in state court before a claim may be heard on collateral review.

Moreover, in <u>Frye</u>, the Supreme Court concluded that counsel's performance was deficient because counsel had completely neglected to inform the defendant of a favorable plea offer prior to its expiration. <u>Frye</u>, 132 S. Ct. at 1404.   In <u>Lafler</u>, the parties conceded that the defendant's counsel had rendered deficient performance. 132 S. Ct. at 1383.   In both cases, the remedy was not addressed until *after* defense counsel's performance was determined to be unconstitutionally deficient.   No such finding has been made in the instant case.   Rather, upon review of the record,[4] the Court cannot conclude that no reasonable counsel would

_____

[4] Although the state court rejected Petitioner's claim on facial insufficiency grounds, the claim is not procedurally barred, and this Court may consider it.   See <u>Pope v. Sec'y, Dep't of Corr.</u>, 680 F.3d 1271, 1285-86 (11th Cir. 2012) ("In short, whether the [state court] rejected the claims for facial insufficiency or only after concluding that they were refuted by

have advised his client to reject the state's three-year plea offer. Therefore, Petitioner has not satisfied Strickland's performance prong, and this Court need not address whether the post-conviction court committed a constitutional error when it concluded that it could not provide Petitioner the relief sought.

The United States Supreme Court has recognized that consensual searches do not violate the Fourth Amendment's prohibition against unreasonable searches. See Florida v. Jimeno. 500 U.S. 248, 250-51 (1991) ("[W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.")(citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).   However, the scope of a consent search may not exceed the scope of the consent given. Jimeno, 500 U.S. at 251.  When a defendant gives a general statement of consent, the scope of the permissible search "is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass." United States v. Street, 472 F.3d 1298, 1308 (11th Cir. 2006).

Although the consent-to-search form signed by Petitioner was broad, Petitioner was specifically told by the police that they were looking for evidence in relation to his father's death - "fingerprints and whatnot." (Ex. 6 at 58).   The consent form did

---

the record, the determination would have been on the merits."); Borden v. Allen, 646 F.3d 785, 812 (11th Cir. 2011) (same).

not mention Petitioner's computer, and Petitioner, who was only eighteen years old, did not understand the form to include a search of his computer, which he considered private. Id. at 58, 64.  At the suppression hearing, Officer Thomas Lewis admitted that he was "purposely vague" when he asked Petitioner to sign the consent form because "he was a suspect in a suspicious death, we were intentionally vague because of that.  So we really didn't give him any information as to where we would look.  We wanted it to be – basically, we wanted to just search the entire house." Id. at 13.  Although he testified otherwise at the suppression hearing, Officer Lewis' report indicated that Officer Anthony Pribble had to turn on Petitioner's computer in order to perform the search which located "several" incriminating photographs. Id. 30-31.[5]

Officer Pribble testified that during his search of Petitioner's computer, he "[j]ust starting clicking on some of the desktop icons that were on the desktop, looking for any kind of correspondence, letters or anything like that." (Ex. 6 at 43).  Although Officer Pribble testified that he was looking for "any letters or anything like that that the father may have left or may have been written, correspondence such of that[,]" he admitted that he did not look at Petitioner's emails or Microsoft Word documents or check Petitioner's browsing history. Id. at 45-46.

---

[5] Officer Pribble testified that the computer's monitor came to life when he moved the attached mouse (Ex. 6 at 42).

Instead, Officer Pribble clicked through two separate folders – one entitled "Desktop" which was located on the desktop, and another entitled "Prono" which was located in the desktop folder before he found a .jpg file deemed to contain child pornography (Ex. 4). Officer Pribble admitted that he did not actually read the consent-to-search form signed by Petitioner (Ex. 6 at 47-48).

Defense counsel had reasonable grounds to believe that the police exceeded the scope of Petitioner's permission to search his home when they searched Petitioner's computer. "The scope of a [consensual] search is generally defined by its expressed object." Jimeno, 500 U.S. at 251. Officer Lewis represented to Petitioner that they wanted to look for evidence in relation to his father's death. Petitioner was not informed that the police would perform an exploratory search on his computer, and the police admitted that they were intentionally vague when describing the scope of the search to Petitioner. Courts have concluded in similar situations that the police exceeded the scope of consent. See, e.g., United States v. Turner, 169 F.3d 84, 87 (1st Cir. 1999) (holding that because the defendant's written consent to a search of "the premises," "his vehicle," and "personal property," did not cover the defendant's personal computer, the police exceeded the scope of consent, and the defendant's photographs of child pornography were properly suppressed); United States v. Dichiarinte, 445 F.2d 126, 129 (7th Cir. 1971) (law enforcement

exceeded the scope of the defendant's consent to search his home for narcotics when they read the defendant's personal papers and seized documents implicating the defendant in tax fraud); United States v. Carey, 172 F.3d 1268 (10th Cir. 1999) (law enforcement officers exceeded the scope of a warrant to search a defendant's computer for documentary evidence pertaining to the sale and distribution of controlled substances when their search of the defendant's hard drive uncovered evidence of child pornography).

Moreover, counsel was not unreasonable for concluding that the police exceeded the scope of consent when they searched Petitioner's home without him present.  Petitioner and his uncle testified at the suppression hearing that Petitioner wanted to be present during the search of his home and that Petitioner told police that he wanted to be there; however, the police misrepresented the hours they planned to conduct the search (Ex. 6 at 52, 53, 57).[6]  Specifically, the police told Petitioner that they would be at his house between 11:30 and 12:00, but they began the search at eight in the morning.  Id.  Petitioner's uncle testified that when he asked the police whether he and Petitioner could come to the house earlier, Officer Lewis specifically told him that he would be there at 11:30.  Id. at 53.  The search was

_____

[6] Petitioner had been told by the police that he could not return to his house because they (the police) needed to preserve the scene (Ex. 6 at 63).

nearly complete when Petitioner arrived at the time specified by the police.

Given Petitioner's claims that he wanted to be present during the consensual search and that he informed the police of this desire, it was reasonable for counsel to conclude that the police deliberately misled Petitioner as to the time of the search so that he would not interfere with the search or withdraw his consent. Because "[t]he Fourth Amendment can certainly be violated by guileful as well as by forcible intrusions into a constitutionally protected area[,]" Hoffa v. United States, 385 U.S. 293, 301 (1966), the use of trickery, deception, and lies by police to gain entry into a home is a relevant factor in the consent analysis. While there may have been reason to keep Petitioner from the house while his father's death was being investigated, the state presented no reason for the police to keep Petitioner from the premises during its search. See Luna-Martinez v. State, 984 So. 2d 592, 598-99 (Fla. 2d DCA 2008) (recognizing that the police should not use "tactics that essentially force the individual out of the home" when attempting to obtain consent to search). Given the totality of the circumstances, it was reasonable for counsel to conclude that the police exceeded the scope of Petitioner's consent when they searched his computer without him present.

Petitioner has not overcome the presumption of reasonableness given to counsel's actions. Counsel's failure to accurately predict whether the trial court would accept the arguments in his motion to suppress does not constitute deficient performance. See Sanchez v. United States, 782 F.2d 928, 935 (11th Cir. 1986) ("[W]hen a lawyer makes an informed choice between alternatives, his tactical judgment will almost never be overturned on habeas corpus"). Petitioner's claim is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  **Certificate of Appealability**[7]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such

---

[7] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.   The Florida Attorney General and Alan Chapman are **DISMISSED** as named Respondents.

2.   The 28 U.S.C. § 2254 petition for habeas corpus relief filed by John Patrick Johnson (Doc. 1) is **DENIED**.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___14th___ day of January, 2015.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Counsel of Record